UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| - v. - | : | S13 12 Cr. 171 (JPO) |
| TATYANA GABINSKAYA, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MOTIONS IN LIMINE OF THE UNITED STATES OF AMERICA

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York  10007

AMANDA KRAMER
Assistant United States Attorney
  -- Of Counsel --

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

    I.    Gabinskaya's Offense Conduct............................................................................................ 2

    II.    The Charges ........................................................................................................................ 3

    III.    The Fall 2013 Trial ............................................................................................................. 3

ARGUMENT .................................................................................................................................. 4

    I.    THE COURT SHOULD REQUIRE GABINSKAYA TO GIVE NOTICE OF AN ADVICE OF COUNSEL DEFENSE BY SEPTEMBER 17, 2014 .................................... 4

        A.   Applicable Law ........................................................................................................ 4
        B.   Discussion ................................................................................................................ 5

    II.    THE COURT SHOULD PRECLUDE THE DEFENDANT FROM REFERRING TO THE FALL 2013 TRIAL AS ANYTHING OTHER THAN A "PRIOR PROCEEDING" AND FROM DISCLOSING TO THE JURY THE OUTCOME OF THE TRIAL ................................................................................................................ 7

        A.   Applicable Law ........................................................................................................ 8
        B.   Discussion ................................................................................................................ 9

CONCLUSION ............................................................................................................................. 12

**PRELIMINARY STATEMENT**

Between approximately 2007 and 2012, Dr. Tatyana Gabinskaya participated in a sprawling and multi-faceted fraudulent scheme to defraud insurance companies that provide no-fault automobile insurance (the "Victim Insurers"). Gabinskaya participated in the scheme primarily by serving as a so-called doc-in-the-box, whereby she posed as the true owner and controller of a professional corporation ("PC") used to operate Clearview of Brooklyn Medical P.C. ("Clearview"), an MRI clinic. Although Gabinskaya allowed her name and medical license to be used by her co-conspirators to open, run, and submit claims on behalf of Clearview to get payments from the Victim Insurers, Gabinskaya played no actual role at Clearview. Indeed, in an effort to deceive the Victim Insurers about her true role as a mere paper owner of Clearview, when questioned under oath by one of the Victim Insurers, Gabinskaya told numerous material lies.

On September 22, 2014, Dr. Tatyana Gabinskaya is scheduled to stand trial for a second time on the fraud charges in S13 12 Cr. 171 (JPO) (the "Indictment"). The first trial, which took place between September and November 2013, resulted in a mistrial when the jury was unable to reach a verdict on the four counts against Gabinskaya (the "Fall 2013 Trial"). In advance of the scheduled retrial, the Government respectfully moves this Court in limine to:

(1) Require defense counsel to provide notice and discovery to the Government no later than September 17, 2014, if the defendant intends to advance an advice of counsel defense; and

(2) Preclude the defendant from informing the jury of the existence or outcome of the Fall 2013 Trial, or referring to that trial as anything other than a "prior proceeding."

The Court should require Gabinskaya to give notice promptly if she intends to assert an advice of counsel defense to avoid mid-trial delays and to allow the Court the

opportunity to ensure that there is a factual basis for such a defense before it is put before the jury in the defendant's opening statement.

The fact and outcome of the prior trial are wholly irrelevant to the issues at trial. The fact that there was a prior trial and that the jury hung as to Gabinskaya (and acquitted two defendants) is not admissible evidence and poses a serious danger of unfair prejudice to Gabinskaya and to the Government. Without the requested preclusion ruling, the trial threatens to become mired in argument, questioning, and presentation of evidence that has no bearing on the elements of the crimes charged or on any legitimate defense. The Government respectfully submits that the requested ruling is necessary to prevent risk of undue prejudice, jury confusion, distraction, and unnecessary prolongation of proceedings.

## BACKGROUND

### I. Gabinskaya's Offense Conduct

As described above, Gabinskaya was the owner-for-hire at Clearview, which was actually owned and controlled by codefendants Mikhail Zemlyansky and Michael Danilovich. Clearview was one of many PCs used in this massive scheme to defraud.

In December 2010 and January 2011, Gabinskaya was required by Allstate, one of the Victim Insurers, to submit to an examination under oath ("EUO"). Gabinskaya was represented at the EUO by Matthew Conroy, who is scheduled to stand trial on December 2, 2014 for his role in this fraudulent scheme. Gabinskaya told several clear, material lies under oath in that EUO to further the fraudulent scheme and prevent Victim Insurer Allstate from learning that Gabinskaya was not the true owner/controller of Clearview, so that Allstate would pay the claims submitted by Clearview. In addition to her criminal role at Clearview,

Gabinskaya incorporated six other PCs in a short time frame – one in 2007, three in three-month period in 2009, and two in a four-month period in 2010.

## II.     The Charges

The Indictment charges Gabinskaya in four counts (Counts Two through Five), all in connection with the scheme to defraud the Victim Insurers.  Count Two charges the defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349.  Count Three charges the defendant with health care fraud, in violation of Title 18, United States Code, Sections 1347 and 2.  Count Four charges the defendant with conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section 1349.  Count Five charges the defendant with mail fraud, in violation of Title 18, United States Code, Sections 1341 and 2.

## III.    The Fall 2013 Trial

The trial of Mikhail Zemlyansky, Michael Danilovich, Tatyana Gabinskaya, Joseph Vitoulis, and Billy Geris commenced before this Court on September 10, 2013.  On November 4, 2014, after almost two months of trial, including seven trial days of deliberations, the trial concluded.  The jury acquitted Joseph Vitoulis and Billy Geris.  The jury hung on all counts with respect to Michael Danilovich and Tatyana Gabinskaya.  Mikhail Zemlyansky was acquitted on all counts except for Count One, on which the jury hung.  Mikhail Zemlyansky and Michael Danilovich are scheduled to be retried on October 15, 2014 on a Superseding Indictment (S18 12 Cr. 171 (JPO)).

**ARGUMENT**

I. **THE COURT SHOULD REQUIRE GABINSKAYA TO GIVE NOTICE OF AN ADVICE OF COUNSEL DEFENSE BY SEPTEMBER 17, 2014**

    **A. Applicable Law**

To benefit from an advice of counsel defense, a defendant must show that she (1) honestly and in good faith sought the advice of counsel; (2) fully and honestly laid all the facts before her counsel; and (3) in good faith and honestly followed counsel's advice, believing it to be correct and intending that her acts be lawful. United States v. Colasuomo, 697 F.3d 164, 181 (2d Cir. 2012). Where a defendant cannot make such a showing, argument and evidence of advice of counsel may be precluded. As a general matter, it is well settled that, "[u]pon a proper request, a defendant is entitled to a jury instruction on any defense theory for which there is a foundation in the evidence, even if the trial court determines that the evidentiary foundation of the defense theory is only tenuous." United States v. Paul, 110 F.3d 869, 871 (2d Cir. 1997) (citations omitted). It is equally well-established, however, that a court may conduct a pre-trial evidentiary hearing "to determine whether a defense fails as a matter of law." Id.; see also United States v. Bakhtiari, 913 F.2d 1053, 1057 (2d Cir. 1990) (approving the use of a pre-trial hearing to determine whether the evidence of duress or coercion was sufficient to raise a jury issue or whether it failed as a matter of law). "If, after the hearing, the court finds that the defendant's evidence is insufficient as a matter of law to establish the defense, the court is under no duty to give the requested jury charge or to allow the defendant to present the evidence to the jury." Paul, 110 F.3d at 871.

With the advice of counsel defense, if the requisite showing is not made, argument on the issue of counsel's advice or mere presence may be precluded entirely because a jury may otherwise be led to believe that a lawyer "'blessed' the legality of" a transaction, which

4

"misunderstanding would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense." S.E.C. v. Tourre, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013).

Raising an advice of counsel defense also triggers practical consequences as to discovery. It is well settled that, by asserting an advice of counsel defense, and thereby relying on otherwise privileged attorney-client communications, a defendant waives privilege over all other attorney-client communications about the same subject matter. "[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000; see also id. at 183 n.4 ("The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter." (citation and quotation marks omitted)); Fed. R. Evid. 502(a).

### B. Discussion

There is good reason to believe that Gabinskaya may raise an advice of counsel defense at this trial. During the Fall 2013 Trial, Gabinskaya's then-counsel asserted that Gabinskaya relied on the advice of co-defendant attorney Matthew Conroy before joining the fraudulent scheme. In his opening, he said "Before even thinking about opening up this clinic . . . she goes to an attorney, an attorney who is a health care attorney or holds him out to be a health care attorney . . . Matthew Conroy -- that is the attorney she seeks advice from . . ."). See Trial Tr. 97:10-99:5 (Opening Statement on behalf of Gabinskaya, Sept. 12, 2013). In his summation, he argued: "She goes and consults with an attorney about the proper legalities and structure of

her professional corporation." See Trial Tr. 4447:24-4448:1 (Closing Argument on behalf of Gabinskaya, Oct. 21, 2013).

In addition, counsel suggested that Gabinskaya relied on advice of counsel when she gave false answers under oath.[1]  For example, during his cross-examination of the court reporter who transcribed Gabinskaya's EUOs, counsel asked:

> Q: The transcript that you just viewed, the front page of it, Matthew Conroy, he's an attorney, correct?
> A: Yes.
> Q: And he was there with my client, Dr. Tatyana Gabinskaya, correct?
> A: Yes.
> Q: And you were there during the whole EUO?
> A: Yes.
> Q: And did you happen to see if he was speaking to my client sometimes off the record before you actually were transcribing the testimony?
> A: Yes.

Trial Tr. 3278:12-3278:24 (Cross-examination of Kristine Tereshko, Oct. 10, 2013).  During his closing argument, counsel referred to the EUO and told the jury "My client had an attorney present at that EUO.  Clients do certain things that attorneys tell them to do."  Trial Tr. 4476:21-4476:23 (Closing Argument on behalf of Gabinskaya, Oct. 21, 2013).  During the Fall 2013 Trial, Gabinskaya did not offer or cite any actual evidence in support of her purported advice of counsel defense.

Notwithstanding the lengthy record from the Fall 2013 Trial, present defense counsel has indicated that he is not able to give the Government notice of an advice of counsel

---

[1] It is worth noting that advice of counsel is not a legal defense to perjury on factual matters.  See United States v. Mutuc, 349 F.3d 930, 936 (7th Cir. 2003) (holding that advice of counsel "cannot support a defense to perjury"); see also Am Jur. 2d Perjury § 97 ("Although a defendant's reliance on the advice of his attorney as the basis for making an allegedly perjurious statement may be important as bearing on whether the defendant made the statement with a corrupt motive, it is well established that where the matter testified to is purely one of fact, the defendant cannot be permitted to prove that he acted under legal advice . . .").

defense (or even identify whether there are other attorneys aside from Conroy on whom his client relied) until he receives the Government's 3500 material (which will be produced on September 15, 2014), and until he sees what evidence the Government offers.  The Government respectfully submits that failure to give prompt notice raises the significant risk of mid-trial delay while the Government receives and reviews discovery and other documents related to the defense, and potentially deprives the Court of the opportunity to ensure that there is a factual basis for the defense before defense counsel addresses the jury in his opening statement.

Accordingly, the Government respectfully requests that the Court require Gabinskaya's counsel to be prepared at the final pretrial conference on September 17 to give notice, provide the name of the counsel upon whose advice the defendant purportedly relied, and produce any relevant discovery, to allow the Government to review any relevant documents, including additional documents the Government may have to subpoena (from lawyers, for example), and to permit the Court to determine if there is a sufficient factual basis for such a defense.  See United States v. Rubin/Chambers, Dunhill Ins. Servs., 828 F. Supp. 2d 698, 711 (S.D.N.Y. 2011) (requiring defense to provide notice to Government of any advice-of-counsel defense before the final pre-trial conference); United States v. Mubayyid, No. 05 Cr. 40026 (FDS), 2007 WL 1826067, at *2 (D. Mass. June 22, 2007) (noting Court's inherent authority to require notice of defenses where, as here, such notice is not required by statute or rule).

## II. THE COURT SHOULD PRECLUDE THE DEFENDANT FROM REFERRING TO THE FALL 2013 TRIAL AS ANYTHING OTHER THAN A "PRIOR PROCEEDING" AND FROM DISCLOSING TO THE JURY THE OUTCOME OF THE TRIAL

To the extent necessary to refer to the Fall 2013 Trial during this trial (e.g., while impeaching a witness or refreshing recollection with prior testimony), the Court should order that the parties refrain from informing the jury of the outcome of that trial or referring to it as

anything other than a "prior proceeding."[2] Allowing the defense to inform the jury of the fact that there was a trial in this matter, or, worse, share the irrelevant outcome of the trial, would be contrary to law and unduly prejudicial to the Government and to Gabinskaya.

### A. Applicable Law

It is axiomatic that only relevant evidence is admissible. See Fed. R. Evid. 402. Evidence is relevant only if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Trial courts enjoy broad discretion to decide evidentiary issues, see, e.g., United States v. Khalil, 214 F.3d 111, 122 (2d Cir. 2000). Moreover, "[p]articular deference is properly accorded to a ruling of the trial judge with respect to relevancy" or lack thereof. See United States v. Southland Corp., 760 F.2d 1366, 1375 (2d Cir. 1985) (Friendly, J.). A trial judge's evidentiary rulings may be reviewed only for abuse of discretion. See United States v. Taubman, 297 F.3d 161, 164 (2d Cir. 2002).

While the Confrontation Clause of the Sixth Amendment guarantees a defendant the right to cross-examine witnesses and present a defense, the scope and extent of cross-examination are committed to the sound discretion of the trial judge. See United States v. Bejasa, 904 F.2d 137, 141 (2d Cir. 1990); see also United States v. Salameh, 152 F.3d 88, 131 (2d Cir. 1998). The District Court is responsible for supervising the "mode . . . of examining witnesses" so as to make the presentation effective for "determining the truth" and to avoid "wasting time." Fed. R. Evid. 611(a). In carrying out this responsibility, the district judge has "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . .

---

[2] The Government unsuccessfully attempted to reach an agreement with defense counsel on this point. He indicated that he cannot agree to this until he sees the Government's 3500 material and the evidence the Government offers.

. cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

The District Court's latitude extends to excluding "even relevant evidence if it finds that the 'probative value of the testimony' is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." United States v. Crowley, 318 F.3d 401, 417 (2d Cir. 2003) (quoting Fed. R. Evid. 403 and United States v. Flaharty, 295 F.3d 182, 191 (2d Cir. 2002)). Indeed, only upon showing that the District Court abused its "broad discretion" to "restrict cross-examination" is a defendant entitled to relief on appeal. United States v. Crowley, 318 F.3d at 417; see also United States v. Rosa, 11 F.3d 315, 335 (2d Cir. 1993).

### B. Discussion

The Court should not permit the defendant to taint this trial with irrelevant evidence about the outcome of the Fall 2013 Trial. Alerting the jury to the prior hung counts as to Gabinskaya fails the threshold test for relevance. Another jury's determination (or lack thereof) does not make any fact at issue in the trial against Gabinskaya more or less likely. See Fed. R. Evid. 401. This is especially true with respect to the hung counts:

> A hung count hardly 'make[s] the existence of any fact . . . more probable or less probable. A host of reasons -- sharp disagreement, confusion about the issues, exhaustion after a long trial, to name but a few -- could work alone or in tandem to cause a jury to hang. To ascribe meaning to a hung count would presume an ability to identify which factor was at play in the jury room. But that is not reasoned analysis; it is guesswork.

Yeager v. United States, 557 U.S. 110, 121-22 (2009) (internal quotations and citations omitted).

The acquittals of defendants Vitoulis and Geris are likewise irrelevant. Evidence of an acquittal is not relevant "because it does not prove innocence but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime." United States v. Kerley, 643 F.2d 299, 300-01 (5th Cir. 1981). Courts have recognized that criminal acquittals are sometimes "erroneous," and to "spread the effect of an erroneous acquittal to all those who participated in a particular criminal transaction" would be against public interest. Standefer v. United States, 447 U.S. 10, 25 (1980) (internal citations omitted).[3]

In addition to this clear legal authority finding the results of prior trials to be inadmissible, Rule 403 plainly bars its admission into evidence because any minimal probative value would be substantially outweighed by the significant danger of unfair prejudice, confusion of the issues, misleading the jury, and waste of time. See Fed. R. Evid. 403; United States v. Cook, 776 F. Supp. 755 (S.D.N.Y. 1991) (precluding any reference to the outcome of a prior trial on the basis that conveying to the jury that consideration of the outcome of that trial should have an effect on its deliberations in the second trial would be highly prejudicial to the Government and the defendant). The potential prejudice to the Government is that the jury may be tainted by the prior jury's inability to agree as to certain counts, or its decision to acquit on certain counts, and may conclude that if a previous panel of jurors could not agree or even acquitted as to other

---

[3] See also United States v. Viserto, 596 F.2d 531, 537 (2d. Cir. 1979) ("[A] judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted."); United States v. Marrero-Ortiz, 160 F.3d 768, 775 (1st Cir. 1998) (acquittal does not establish that a defendant is not guilty); Prince v. Lockhart, 971 F.2d 118, 122 (8th Cir. 1992) ("[J]udgments of acquittal are not generally relevant . . . because they do not prove innocence; they simply show that the government did not meet its burden of proving guilt beyond a reasonable doubt.").

defendants in the scheme, then there must be reasonable doubt as to Gabinskaya.  See United States v. Cook, 776 F. Supp. at 759 n.1.

There is a significant risk of prejudice to Gabinskaya as well, because mention of the Fall 2013 Trial may invite speculation as to whether Gabinskaya was convicted but that on appeal the conviction was overturned on a technicality.  See id.  In addition, it may never occur to the jurors in this trial that they have the option of hanging; informing them of the outcome of the prior trial invites them to fail to reach a verdict in this trial.

Judge Swain's reasoning in United States v. Amato, 540 F.3d 153 (2008), S3 01 Cr. 58 (LTS), is instructive.  There, Judge Swain ruled correctly that the jury in the second trial was not to be informed of the prior results because of the grossly prejudicial effect it could have.  One defendant tried to circumvent that ruling through cross-examination of a cooperating witness.  (Tr. 3731-42 (the relevant portion of the transcript is attached hereto as Exhibit A)).  Sustaining the Government's objection, Judge Swain refused to permit on Rule 403 grounds "references to the prior proceedings as a prior trial" or any reference that the "testimony was against Mr. Fasciana or Mr. Amato, again suggesting a prior trial."  (Tr. 3745).  As Judge Swain explained, there was considerable risk that the jury would speculate about a prior trial, and "[t]here [was] no probative value on credibility or anything else that they have to decide at this trial that would be served by disclosing to this jury or acknowledging to this jury that there was a prior trial."  (Tr. 3746).  In affirming Judge Swain's decision, the Court of Appeals concluded that the District Court "acted well within its discretion after weighing the risk of prejudice against the probative value of the testimony."  United States v. Amato, 540 F.3d 153, 165 (2008) (citing Fed. R. Evid. 403 and United States v. Crowley, 318 F.3d 401, 417 (2d Cir. 2003)).

Accordingly, the Court should preclude the defense from referring to the Fall 2013 Trial as anything other than a "prior proceeding," or informing the jury – directly or through cross-examination – of the outcome of the Fall 2013 Trial.[4]

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's motions in limine and enter the enclosed proposed order.

DATED:   September 2, 2014
         New York, New York

                                               Respectfully submitted,

                                               PREET BHARARA
                                               United States Attorney for the
                                               Southern District of New York


                                     By:       /s/
                                               Amanda Kramer
                                               Assistant United States Attorney
                                               Southern District of New York
                                               (212) 637-2478

---

[4] Although research has revealed no cases where a party was permitted to reference the outcome of a previous trial, at least one court has permitted reference to a "prior trial," rather than a "prior proceeding." See United States v. Giovanelli, 945 F.2d 479, 487-88 (2d Cir. 1991) (permitting reference to "prior trial" where the defense's main theory was that Government witnesses had refined their testimony over the course of numerous prior proceedings, including trial). Given the established holding that references to a prior trial invite the jury to speculate as to the outcome of that trial – potentially to the harm of either the defendant or the Government – the more prudent course in this case – and the commonly-accepted practice within this District – is to use the "proceeding" label rather than referencing a "trial."

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | <u>Order</u> |
| - v. - : | |
| : | |
| TATYANA GABINSKAYA, : | S13 12 Cr. 171 (JPO) |
| : | |
| Defendant. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

      Upon the application of Preet Bharara, the United States Attorney for the Southern District of New York, by Assistant United States Attorney Amanda Kramer, of counsel, and for good cause shown, it is hereby ORDERED that counsel for defendant Tatyana Gabinskaya shall be prepared at the conference scheduled for September 17, 2014, at 3:30 p.m., to give notice of defendant's intention to raise an advice of counsel defense, to identify any such counsel, and to provide discovery relevant to the defense.

      SO ORDERED.

Dated:  September ____, 2014

_____

Honorable J. Paul Oetken
United States District Judge
Southern District of New York

**CERTIFICATE OF SERVICE FILED ELECTRONICALLY**

The undersigned attorney, duly authorized to represent the United States before this Court, hereby certifies that on the below date, she served or caused to be served the following documents in the manner indicated:

Motions in Limine of the United States of America

Service via Clerk's Notice of Electronic Filing upon the following attorney, who is a Filing User in this case:

Sean M. Maher Esq.
smaher@seanmaherlaw.com


Dated:      New York, New York
            September 2, 2014

                                        Respectfully submitted,

                                        _____/s/_____
                                        Amanda Kramer
                                        Assistant United States Attorney