UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| - v. - | : | S13 12 Cr. 171 (JPO) |
| TATYANA GABINSKAYA, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# BRIEF IN FURTHER SUPPORT OF THE MOTIONS IN LIMINE
## OF THE UNITED STATES OF AMERICA

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York  10007

AMANDA KRAMER
JANIS ECHENBERG
Assistant United States Attorneys
   -- Of Counsel --

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

   I.   GABINSKAYA SHOULD BE REQUIRED TO GIVE ADVANCE NOTICE OF AN ADVICE OF COUNSEL DEFENSE.............................................................................. 2

   II.   THE DEFENDANT'S STATEMENTS AND EVIDENCE OF HER INCORPORATION OF NUMEROUS PROFESSIONAL CORPORATIONS ARE ADMISSIBLE....................................................................................................... 3

      a.   THE PROFFERED EVIDENCE .............................................................................. 3

      b.   APPLICABLE LAW ................................................................................................ 5

         i.   DIRECT EVIDENCE OF THE CHARGED CRIMES IS ADMISSIBLE ............ 5

         ii.  OTHER ACT EVIDENCE IS ADMISSIBLE PURSUANT TO RULE 404(B).... 7

      c.   DISCUSSION............................................................................................................ 9

         i. GABINSKAYA'S STATEMENTS ARE ADMISSIBLE ..................................... 9

         ii. GABINSKAYA'S INCORPORATION OF SEVEN PCS IS ADMISSIBLE ...... 10

         iii. THE PROFFERED EVIDENCE SHOULD NOT BE EXCLUDED UNDER ....... RULE 403.................................................................................................. 12

   III.  THERE IS NO VALID BASIS FOR THE JURY TO LEARN ABOUT THE PRIOR TRIAL OR ITS OUTCOME........................................................................... 12

CONCLUSION................................................................................................................... 15

**INTRODUCTION**

The Government respectfully submits this brief in further support of its motions in limine, which were filed on September 2, 2014, and in response to the September 8, 2014 brief submitted on behalf of defendant Tatyana Gabinskaya (the "Defense Brief" or "Def. Br."). In addition, in light of defense counsel's recent notice that he intends to object to the admissibility of certain direct evidence of Gabinskaya's participation in the charged conspiracies and schemes to defraud – evidence that was admitted during the fall 2013 trial of Gabinskaya and several of her co-conspirators (the "Fall 2013 Trial") – the Government also seeks a ruling that such evidence, and additional statements of the defendant made on two other occasions, are admissible as direct proof of the charged crimes or, in the alternative, pursuant to Rule 404(b).

For the reasons set forth in the Government's September 2, 2014 brief in support of its motions in limine, as well as the additional reasons that follow below, the Government respectfully submits that the Court should:

(1) require defense counsel to give notice by September 17, 2014 if he intends to raise an advice of counsel defense;

(2) admit evidence of (a) Gabinskaya's numerous statements made during, and in furtherance of, the charged fraudulent schemes and conspiracies to defraud and (b) Gabinskaya's incorporation of seven professional corporations ("PCs") during the pendency of the conspiracy; and

(3) preclude the defense from informing the jury of the existence or outcome of the Fall 2013 Trial.

**ARGUMENT**

I.  **GABINSKAYA SHOULD BE REQUIRED TO GIVE ADVANCE NOTICE OF AN ADVICE OF COUNSEL DEFENSE**

Gabinskaya contends that she cannot possibly decide before trial whether to present an advice of counsel defense because the Government has not yet offered, and the Court has not yet received in evidence, the excerpts of two examinations under oath ("EUOs") in which Gabinskaya made false statements during and in furtherance of the charged conspiracies and schemes. (Def. Br. at 5). This argument is illogical for several reasons. First, the EUOs were admitted in evidence in the Fall 2013 Trial over the defendants' objections (see Trial Tr. 2982-2994; 3271-3272), and, as described below, are plainly admissible as direct evidence of the charged crimes.[1] Second, based on the record of the Fall 2013 Trial, the admissibility of the EUOs is not dispositive of Gabinskaya's intent to raise an advice of counsel defense. Rather, Gabinskaya's prior counsel repeatedly argued that Gabinskaya consulted with and relied on counsel concerning the fraudulent structure of her PC, notwithstanding the sheer absence of evidence in support of that argument. (See Trial Tr. 4447:24-4448:1 ("She goes and consults with an attorney about the proper legalities and structure of her professional corporation.")).

The defendant's claim that making such a disclosure is premature at this time is belied by the lengthy record in this case, which includes an entire trial and the concomitant production of a full set of 3500 material and exhibits. Over the course of the past several weeks, the Government has produced to the defendant more than twenty of the exhibits it intends to introduce at this trial, including the defendant's many false statements and an admission, her

---

[1] Defense counsel neither gave the Government notice of his intent to object to the admissibility of the EUOs, nor moved in limine to preclude them, aside from posing in his brief the possibility that "the Court [may] find[] that the EUO should be deemed inadmissible under 404(b), 403, or any other grounds." (Def. Br. at 5). The Government respectfully requests that the Court rule on the admissibility of the EUOs in limine, as addressed below.

2

professional corporation and licensing records and those of a witness, the defendant's subscriber and toll records (which reflect contact between Gabinskaya and her co-conspirators), insurance claim records submitted and received in connection with Clearview (the defendant's MRI facility), and a recording and transcript referencing Gabinskaya's role in the conspiracy.  Many of the remaining exhibits the Government intends to offer were admitted in the Fall 2013 Trial, and have long since been in the possession of defense counsel.  On that record and mere days from the start of trial, there is no credible basis to claim that notice of a defense that was already raised is being sought prematurely.

## II.  THE DEFENDANT'S STATEMENTS AND EVIDENCE OF HER INCORPORATION OF NUMEROUS PROFESSIONAL CORPORATIONS ARE ADMISSIBLE

### a. THE PROFFERED EVIDENCE

#### i. GABINSKAYA'S NUMEROUS FALSE STATEMENTS DURING, AND IN FURTHERANCE OF, THE CHARGED CONSPIRACIES AND SCHEMES AND AN ADMISSION

Gabinskaya was a straw owner of Clearview of Brooklyn Medical PC ("Clearview"), an MRI clinic that was, in reality, owned by other participants in the fraud.  One of the ways Gabinskaya committed fraud was by making materially false and fraudulent statements about her role and degree of involvement at the clinic in an effort to deceive insurance companies (the "Victim Insurers") into paying claims that would not otherwise be paid.

The Government anticipates calling one or more witnesses, employees of an insurance company, who conducted the interviews of Gabinskaya in June and July 2010 that are memorialized in Government Exhibits 3 and 4, which are attached hereto (the "interviews").[2] During those interviews, Gabinskaya made both admissions relevant to, and materially false and

---

[2] These exhibits were produced to defense counsel on September 11, 2014, very shortly after the Government received them.

3

fraudulent statements in furtherance of, her scheme to defraud the Victim Insurers into believing that Clearview was actually owned by a physician, even though that was not the case.  For example, in the July 2010 interview, when asked if Gabinskaya owned any PCs other than Ridgewood Medical, Gabinskaya admitted to owing only "a pediatric office" and an "MRI PC in Brooklyn," (GX 3-4, at 1), even though as of the date of the interview, Gabinskaya had incorporated seven PCs, including six PCs in the previous 18 months, as set forth below.  Notably, when asked about Clearview, Gabinskaya admitted that "she has no real input there." (Id.)

In addition, the Government intends to offer excerpts of transcripts of Examinations Under Oath taken in December 2010, and January 2011, as Government Exhibits 1 and 2 (copies of which are attached hereto).  Aside from the addition of a few more pages of Gabinskaya's testimony and the deletion of a few blank pages, Government Exhibits 1 and 2 are identical to what were received in evidence at the Fall 2013 Trial as Government Exhibits 26A and 27A.  The EUO transcripts contain numerous lies by Gabinskaya that she told during and in furtherance of the charged schemes and conspiracies, the falsity of which the Government intends to prove at trial.  For example, Gabinskaya falsely claimed that:  (1) Gabinskaya would interview every patient during his/her first visit to Clearview, (see GX 1, at 53-54; GX 2, at 10), and sometimes conducts physical exams of patients at Clearview (see GX 2, at 11); (2) Clearview employees would seek Gabinskaya's approval for time off (see GX 1, at 83); (3) Gabinskaya recruited clients for Clearview, and decided which medical offices should receive Clearview MRI order forms (see GX 1, at 52, 101; GX 2, at 10-12); Gabinskaya was at Clearview three hours per day, 2-3 times per week (see GX 1, at 54); and Gabinskaya reviewed MRIs of the brain before they went to the reviewing radiologist to rule out the need for

emergency procedures (see GX 1, at 58).  Each one of these materially false and fraudulent statements was made during and in furtherance of the charged frauds, in an effort to deceive the Victim Insurers into believing that Gabinskaya was the true owner of Clearview.

### ii. GABINSKAYA'S INCORPORATION OF SEVEN PROFESSIONAL CORPORATIONS DURING THE CHARGED CONSPIRACIES AND SCHEMES

The Government intends to offer the incorporation records of Gabinskaya's seven PCs, which were admitted (along with Gabinskaya's licensing records) at the Fall 2013 Trial as Government Exhibit 609.  Each of the PCs the defendant incorporated is listed below with its date of incorporation and address of record:

| Name | Date of Incorporation | Address |
|---|---|---|
| Tatyana Gabinsky Medical Care PC | 8/27/2007 | |
| Novacare Medical PC | 1/2/2009 | 2080 East 24th Street, Brooklyn, NY 11229 |
| J&J Medical PC | 2/3/2009 | 762 Elmont Road, Elmont, NY |
| Ridgewood Medical PC | 3/12/2009 | 919 Wyckoff Ave, Ridgewood, NY |
| Clearview of Brooklyn Medical PC | 9/1/2009 | 2965 Ocean Parkway, Brooklyn, NY |
| PM Pediatrics Associates PLLC | 1/28/2010 | 2378 Ralph Ave, Brooklyn, NY |
| Beta Medical Care PC | 4/8/2010 | 2150 Beverley Road, Brooklyn, NY |

The incorporation documents for each of these PCs, which the Government intends to offer into evidence as direct evidence of the charged crimes and, in the alternative, pursuant to Rule 404(b), were admitted in the Fall 2013 Trial as part of Government Exhibit 609.

### b. APPLICABLE LAW

#### i. DIRECT EVIDENCE OF THE CHARGED CRIMES IS ADMISSIBLE

The Federal Rules of Evidence "direct the trial judge generally to admit all evidence having 'any tendency' to make the existence of a material fact 'more probable or less probable than it would be without the evidence.'"  Tome v. United States, 513 U.S. 150, 174

5

(1995) (quoting Fed. R. Evid. 401, 402). It is well-established that all relevant evidence "is admissible unless the Rules provide otherwise." Huddleston v. United States, 485 U.S. 681, 687 (1988). "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997). Acts that are committed as part of a charged conspiracy or scheme are plainly relevant. See United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992) ("An act that is alleged to have been done in furtherance of the alleged conspiracy, however, is not an 'other act' within the meaning of Rule 404(b); rather, it is part of the very act charged.").

In addition, evidence of an uncharged act is admissible as direct evidence, without regard to Rule 404(b), if the uncharged act (1) "arose out of the same transaction or series of transactions as the charged offense"; (2) "is inextricably intertwined with the evidence regarding the charged offense"; or (3) "is necessary to complete the story of the crime on trial." United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997). The Second Circuit has repeatedly affirmed the admissibility of evidence fitting one or more of these descriptions, whether it relates to conduct during the period of the charged crime - as is the case here - or before it. See, e.g., United States v. Hsu, 669 F.3d 112, 118-19 (2d Cir. 2012) (affirming district court's admission, as direct evidence, of testimony that defendant had engaged in a Ponzi scheme contemporaneously with, and arguably related to, the campaign finance violations with which defendant was charged and convicted at trial); United States v. Robinson, 702 F.3d 22, 37-38 (2d Cir. 2012) (in child sex trafficking case, affirming admission as direct evidence and necessary to complete the story of the crimes on trial proof of defendant's calls, contemporaneous with the charged conduct, in which he discussed uncharged crimes related to prostitution and trafficking);

6

United States v. Rigas, 490 F.3d 208, 238-239 (2d Cir. 2007) (affirming district court's decision to permit Government to adduce evidence of uncharged fraudulent acts predating the charged conspiracy as direct proof of charged accounting fraud conspiracy because the evidence "arose out of the same transaction or series of transactions as the charged offense, [were] inextricably intertwined with the evidence regarding the charged offense, or [were] necessary to complete the story of the crime on trial") (quotation omitted); United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (in case charging false statements to maintain a line of credit, affirming admissibility of uncharged acts of falsification of business inventory, which occurred at or around the same time as the charged crimes, as direct proof inextricably intertwined with charged conduct).

Moreover, in considering whether something is evidence of the crime charged, the Court of Appeals has explained that such evidence is not limited to "that which directly establishes an element of the crime." United States v. Gonzalez, 110 F.3d 936, 941-42 (2d Cir. 1997). Rather, it is well established, for example, that "other acts" evidence is admissible as direct evidence of the crimes charged and not considered Rule 404(b) evidence if the act in question: (i) "arose out of the same transaction or series of transactions as the charged offense," (ii) "is inextricably intertwined with the evidence regarding the charged offense," or (iii) "is necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotation marks omitted); see also United States v. Hsu, 669 F.3d 112, 118 (2d Cir. 2012).

### ii. OTHER ACT EVIDENCE IS ADMISSIBLE PURSUANT TO RULE 404(B)

It is well settled that "other acts" evidence is admissible under Rule 404(b) so long as the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for which the defendant is on trial; and (3) has probative value that is not substantially outweighed by any

7

unfair prejudicial effect. If requested, such evidence must be admitted with limiting instructions to the jury. See United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993); United States v. Ramirez, 894 F.2d 565, 568 (2d Cir. 1990) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)); United States v. Smith, 727 F.2d 214, 219-20 (2d Cir. 1984); United States v. Siegal, 717 F.2d 9, 16-17 (2d Cir. 1983); United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988) ("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity."). Rule 404(b) permits the admission of "other act" evidence for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).[3] A defendant's knowledge and intent is in issue unless the defendant has unequivocally conceded that element of the offense. See, e.g., United States v. Colon, 880 F.2d 650, 656-57 (2d Cir. 1989); United States v. Peterson, 808 F.2d 969, 974 (2d Cir. 1987); see also Ramirez, 894 F.2d at 568 (holding that when the defendant "disavows awareness that a crime was being perpetrated" and the government bears the burden of proving knowledge "as an element of the crime, knowledge is properly put in issue").

The Second Circuit "has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." United States v. LaFlam, 369 F.3d 153, 156 (2d Cir. 2004);

---

[3] This well-established Rule 404(b) purpose for admitting "other act" evidence bears a close relationship to the rationale for treating as direct evidence proof of "other acts" that are inextricably intertwined with and necessary to complete the story of the charged conduct, discussed above. The Second Circuit has noted this similarity, and suggested that the question whether to treat evidence of this kind as Rule 404(b) or direct proof turns, essentially, on the closeness of the nexus between the "other acts" and the charged conduct. See United States v. Kaiser, 609 F.3d 556, 570 (2d Cir. 2010) (noting that "background" evidence with a sufficiently close connection to the conspiracy charged is better viewed as direct proof rather than through the lens of Rule 404(b)).

see also United States v. Curley, 639 F.3d 50, 56 (2d Cir. 2011); United States v. McCallum, 584 F.3d 471, 474-75 (2d Cir. 2009).

    **c. DISCUSSION**

        **i. GABINSKAYA'S STATEMENTS ARE ADMISSIBLE**

On numerous occasions during and in furtherance of the charged conspiracies and fraudulent schemes, Gabinskaya made telling statements and evolving lies to the insurance companies victimized by the charged scheme (the "Victim Insurers") about Gabinskaya's role at Clearview and her involvement with other PCs. In a July 2010 interview conducted at one of Gabinskaya's other PCs, Gabinskaya admitted that she had little input at Clearview. (See GX 3, 4.) Approximately five months later, Gabinskaya sat for her first EUO, which was continued on a second day six weeks later. As described above in further detail, Gabinskaya told numerous lies about her role and degree of involvement at Clearview to convince one of the Victim Insurers that Gabinskaya was the true owner of Clearview so that claims would be paid. In an apparent effort to prevent a Victim Insurer from learning about some of her prior inconsistent statements, and the notable admission that she had little input at Clearview, when asked at the EUO if Gabinskaya had been interviewed by someone from Geico about Clearview, despite having been asked numerous questions about Clearview by two Geico investigators in two separate interviews, she said no. (See GX 1, at 94).

The Government intends to prove the falsity of each of these lies primarily through the testimony of witnesses. Each of Gabinskaya's false and fraudulent statements and misrepresentations, and Gabinskaya's admission that she had little input at Clearview, are

admissible as statements against interest.  See Fed. R. Evid. 801(d)(2)(A).[4]  These statements are highly probative of the defendant's guilt of the charged crimes and should be admitted.

The defendant's contention that, during the Fall 2013 Trial, "the government used the EUO to impeach the credibility of Dr. Gabinskaya, who never testified, on an unrelated bad act for which Dr. Gabinskaya had never been charged (perjury)," is plainly wrong and contradicted by the trial record.  The EUOs were offered as direct evidence against Gabinskaya, not as impeachment evidence or other act evidence.  (See, e.g., Trial Tr. 4348-4352, Government's Closing Argument ("She is asked some very basic questions, ladies and gentlemen, very basic questions that a real owner would be able to answer . . . She knew she was a paper owner and you know this because the scheme didn't work if the PC holder didn't know at least that much.  She lied in very obvious ways to the insurance company during her EUO.  She lied to make it look like she owned Clearview.").)  Far from "unrelated bad acts," the false statements Gabinskaya made in the EUO are some of the fraudulent acts for which she will stand trial in this case.

### ii. GABINSKAYA'S INCORPORATION OF SEVEN PCS IS ADMISSIBLE

Evidence of Gabinskaya's many PCs are proof of her participation in the charged scheme for several reasons.  First, the Government anticipates calling one or more witnesses who will testify that "flipping" is one practice used to commit fraud in the no fault context, whereby a true owner replaces the physicians and PCs with new ones as soon as the insurance companies get suspicious of straw ownership and start questioning the legitimacy of submitted claims.  In that connection, Gabinskaya incorporated six PCs in a 15-month period, including three within a

---

[4] In addition, the statements in the EUO that are made by co-defendant and co-conspirator Matthew Conroy are also admissible as statements of a co-conspirator during and in furtherance of the conspiracy.  See Fed. R. Evid. 801(d)(2)(E).

three-month period. The timing and volume alone render this evidence relevant. Second, the Government intends to offer evidence that the Post Office Box used for Clearview was initially opened in 2006 by co-conspirator Mark Danilovich for a business that has the same exact street address as that used to register Novacare Medical PC by Gabinskaya in January 2009, which is further evidence of the connection between Gabinskaya and the overall scheme, and strongly suggests that flipping at that address. Third, as discussed above, the Government anticipates calling one or more witnesses who interviewed Gabinskaya about Clearview while conducting site visits at Ridgewood Medical PC (also incorporated by Gabinskaya). The fact that Gabinskaya is the owner of both PCs, and was on site at Ridgewood (though never present at Clearview) is relevant and highly probative. Fourth, the Government anticipates calling one or more witnesses who will testify that owning numerous PCs is a red flag to insurance companies that such physician may be a straw owner. Finally, the Government may call one or more witnesses who will give testimony evincing various types of fraud being committed at Novacare Medical PC and J&J Medical PC, another one of Gabinskaya's PCs.[5]

    The evidence that Gabinskaya incorporated these other PCs between August 2007 and April 2010 (within the timeframe of the charged crimes) is admissible as direct evidence because it arises out of the same series of transactions as the charged crimes and is inextricably intertwined with the charged crimes. See United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997). In the alternative, they are admissible as other act evidence to prove Gabinskaya's

---

[5] Based on conversations with a representative from Geico, the Government has also recently learned that J&J Medical, another PC incorporated by Dr. Gabinskaya, submitted numerous bills for NCD tests -- a diagnostic test for nerve damage -- that Geico ultimately determined to be fraudulent. As a result, J&J Medical agreed to cease billing Geico for NCD tests. Similar to the allegations regarding the MRI tests in the instant case, the volume and similarity of results of the NCD tests were an indicia of fraud which led to further investigation by Geico. The Government has sought further information and documentation from Geico and is continuing its investigation of these allegations.

knowledge, intent, absence of mistake and lack of accident.  See United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993).

### iii. THE PROFFERED EVIDENCE SHOULD NOT BE EXCLUDED UNDER RULE 403

The proffered evidence is admissible for the aforementioned reasons, and will not be unduly prejudicial, confusing, or wasteful for purposes of Fed. R. Evid. 403.  As discussed above, all of the proffered evidence is admissible and highly probative of Gabinskaya's commission of the charged crimes.  In addition, the proffered evidence will be brief, straightforward, and not cumulative, and will not unduly delay or confuse the jury.  Moreover, because the proffered evidence is inextricably intertwined with the evidence of the charged crimes, it will not unduly expand or increase the length of the trial.  Finally, none of the proffered evidence is unduly prejudicial.  Evidence is unfairly prejudicial, "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."  United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980).  In the event that Court admits the evidence of Gabinskaya's other PCs pursuant to Rule 404(b) rather than as direct evidence, the Court may guard against any potential undue prejudice that concerns the defendant by instructing the jury about the proper and improper uses of the "other act" evidence.  Such an instruction serves as an appropriate "final protection" against possible prejudice.  See United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984).

## III. THERE IS NO VALID BASIS FOR THE JURY TO LEARN ABOUT THE PRIOR TRIAL OR ITS OUTCOME

The defendant principally advances two arguments in favor of informing the jury of the existence and outcome of Fall 2013 Trial.  First, he contends that letting the jury know about the prior acquittals and hung counts is necessary to "to cure the harm of any presumption

of guilt of the codefendants so that jurors do not conclude that the 'prior proceedings' resulted in the conviction of the codefendants, or [the defendant]." (Def. Br., Ex. A, at 2.)  Second, the defendant suggests that such a disclosure is necessary to properly impeach a witness on the fact that the prior testimony was given at a trial, as opposed to some other proceeding.  (Def. Br., Ex. A, at 6.)  Both of defendant's arguments are without merit, and should be rejected.  And, even if there were a proper purpose for introducing such an irrelevant piece of hearsay, which there is not, its prejudicial effect overwhelmingly outweighs whatever minimal probative value it may have.

Any concern about the jury's speculation about the status of Gabinskaya's co-conspirators is cured by the jury instruction that was given at the Fall 2013 Trial, and which will be requested by the Government for this trial:

> Persons Not on Trial
>
> During the trial, you heard the names of several other individuals mentioned in connection with this case. Some of those other individuals have been mentioned in connection with what the Government alleges was illegal activity.
>
> I instruct you that you may not draw any inference, favorable or unfavorable, towards the Government or the Defendants from the fact that there may be people who have not been tried as defendants in this case.  Further, you may not speculate as to the reasons why those other people are not on trial, or what became of them in the legal system.  Those matters are wholly outside your concern and have no bearing on your duties as jurors in this case.

See Fall 2013 Trial, Jury Charge, Instruction Y.

More to the point, an acquittal does not demonstrate any fact that is relevant to the jury's consideration.  Rather, an acquittal demonstrates that the Government could not meet its burden, not that the acquitted defendants were innocent, and the fact that a jury hung as to certain counts (and Gabinskaya) is even less relevant.  See United States v. Wells, 347 F.3d 280, 285-86

13

(8th Cir. 2003) ("judgments of acquittal are not generally relevant, because they do not prove innocence; they simply show that the Government did not meet its burden of proving guilt beyond a reasonable doubt.") (citations omitted).  The existence and outcome of the prior trial is not relevant, and should be precluded on that basis alone.

The Court should also reject the application to impeach witnesses not only with prior inconsistent testimony, but also with the fact that the testimony was at a trial.  There is no reason to believe that any witnesses in this case will be subject to the narrow type of impeachment that led the Court of Appeals to permit reference to a prior trial in United States v. Giovanelli, 945 F.2d 479 (2d Cir.1991).

In any event, evidence or argument about the existence and outcome of the prior trial should be precluded under Rule 403 because its prejudicial effect will substantially outweigh its meager probative value.  Indeed, it is highly likely to confuse the issues and mislead the jury.  See Fed. R. Evid. 403; Williams v. United States, 77 A.3d 425, 427-40 (D.C. 2013) (recognizing the limited probative value of prior acquittals and the common practice of precluding them under Rule 403).  This evidence utterly fails the 403 balancing test.

14

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's motions <u>in</u> <u>limine</u> and rule admissible the proffered evidence of Gabinskaya's statements and incorporation of professional corporations.

DATED:   September 12, 2014
         New York, New York

                                      Respectfully submitted,

                                      PREET BHARARA
                                      United States Attorney for the
                                      Southern District of New York

                          By: _____/s/_____
                              Amanda Kramer/Janis Echenberg
                              Assistant United States Attorneys
                              Southern District of New York
                              (212) 637-2478/2597

# CERTIFICATE OF SERVICE FILED ELECTRONICALLY

The undersigned attorney, duly authorized to represent the United States before this Court, hereby certifies that on the below date, she served or caused to be served the following documents in the manner indicated:

Motions in Limine of the United States of America

Service via Clerk's Notice of Electronic Filing upon the following attorney, who is a Filing User in this case:

Sean M. Maher Esq.
smaher@seanmaherlaw.com

Dated:    New York, New York
          September 12, 2014

Respectfully submitted,

_____/s/_____
Amanda Kramer
Assistant United States Attorney